UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

| | |
|---|---|
| KENNETH MICHAEL SWANCHARA, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:05-cv-42 |
| ) | |
| v. ) | HON. RICHARD ALAN ENSLEN |
| ) | |
| PATRICIA CARUSO, *et al.*, ) | |
| ) | **OPINION** |
| Defendants. ) | |
| ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff, an inmate at the Hiawatha Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, Michigan Parole Board Manager David Kleinhardt, and Parole Board Members John Rubitschun, George Lellis, Charles Braddock, Barbara Queen-Johnson, James Quinlan and Margie McNutt. Plaintiff alleges in his Complaint that, on August 13, 2001, he pleaded guilty to aggravated stalking and possession of a short-barrel shotgun, and was sentenced to concurrent terms of 18 to 60 months imprisonment. Plaintiff had a parole interview with Defendant Braddock on May 28, 2002, at which time Plaintiff had a "high" probability of parole. However, Plaintiff was denied parole on June 11, 2002. In the notice of decision, Plaintiff's failure to participate in treatment designed to address his assaultiveness was listed as the "substantial and compelling" reason for departure from the guidelines.

Plaintiff subsequently contacted the Office of the Legislative Corrections Ombudsman and, on July 12, 2002, the Ombudsman sent a letter to the Chairman of the Parole Board, stating that Plaintiff should not have been penalized for failing to participate in assaultive offender training (AOT) because such training had not been made available to Plaintiff.

> I noted that [Plaintiff] had advised the Board he had completed Anger Management classes while in county jail. We obtained a copy of a letter dated 12/3/01 to him from Community Mental Health Clinton/Eaton/Ingham County, stating that Mr. Swanchara attended and participated in this group from May 29 through September 25, 2001. The letter stated that the letter itself could represent a certificate of participation for those sessions. He has also completed Substance Abuse Phase I and II and Alcoholics Anonymous.

The Ombudsman advised the Board to revise its Notice of Decision to accurately reflect the fact that the lack of programming was not Plaintiff's fault.  (*See* July 12, 2002, Letter from Ombudsman's Office to Parole Board Chairman Stephen Marschke, Compl., Ex. D1.)

On July 26, 2002, Parole Board Chairman Marschke sent a memorandum to Defendants Rubitschun, Braddock and Lellis, indicating that he had ordered a new parole interview for Plaintiff, to take place the week of July 29, 2002.  The memo also stated that Defendant Lellis would conduct the interview and that the Board should consider Plaintiff's four month involvement in anger management in the Clinton County Jail prior to beginning his prison term, and whether Plaintiff would be a proper candidate for counseling through community mental health should he be granted parole.  (See July 26, 2002, Mem. by Marschke, Compl., Ex. E.)

On July 30, 2002, Plaintiff was ordered to attend a parole interview with Defendant Lellis, but did not receive a notice of intent to conduct an interview prior to this date as required by state law.  In addition, Plaintiff was not allowed time to arrange for a representative to be present during the interview.  Plaintiff states that during the interview, which was held on August 27, 2002, he discussed the offense openly, admitted to threatening the female victim and was involved in four programs for assaultive behavior.  However, on September 1, 2002, Plaintiff was again denied parole.

In the Amended Decision after Interview (Compl., Ex. G), the Board noted that Plaintiff was continuing to minimize his actions and did not understand their impact.  The Board stated that during the interview, Plaintiff claimed that the only threats he made were left on the male victim's answering machine.  Plaintiff also stated that he did not feel the female victim ever made a complaint against him, despite the fact that a personal protection order prohibiting contact with the

female victim had been served on Plaintiff on April 17, 2001. The Decision further stated that the Board continued to recommend AOT because it could help Plaintiff better understand the circumstances of his crime and reduce the risk that he would re-offend. (See Compl., Ex. G.)

Thereafter, Plaintiff sent numerous letters to Defendants explaining disagreements with the Parole Board. On December 22, 2003, Defendant Lellis conducted a parole interview with Plaintiff, during which Plaintiff's therapy report was discussed. Plaintiff claims that he scored "excellent" on everything identified in therapy. On January 27, 2004, Plaintiff received a notice of decision from Defendants Lellis and Braddock, stating that Plaintiff was unable to list the risk factors identified in therapy. (*See* Compl., Ex. L.) Plaintiff was given a 12-month continuance. On November 1, 2004, Defendant Quinlan conducted a parole interview with Plaintiff, during which Plaintiff stated that he was sorry for his actions and that he took complete responsibility for his behavior. In addition, Plaintiff stated that although the reception center test results showed he was not alcohol dependent, he still involved himself in Alcoholics Anonymous and Substance Abuse Phase 1 and 2 because he had a history of abusing alcohol. On November 27, 2004, Plaintiff received a notice of decision denying him parole, which states:

> Despite completion of therapy, [Plaintiff] fails at interview to show insight into his crime or remorse for his victim. He has failed to acknowledge a serious alcohol problem, despite his prior history. Still viewed as a risk.

(*See* Compl., Ex. O.)

Plaintiff claims that the reasons given for denying him parole have been false and/or improper and that the repeated denial of parole constitutes a violation of his due process rights.

Plaintiff states that he is suing the Defendants in their individual capacities. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.   Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[1] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

---

[1] To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

Although a prisoner may not grieve a decision by the parole board to grant or deny parole, a prisoner may grieve a failure of the parole board to follow the parole process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ F-3 (effective Nov. 1, 2000), Policy Directive 06.05.100, ¶ H (effective July 1, 2000) (can challenge calculation of guidelines score, including accuracy of information used to calculate the score), Policy Directive 06.05.106, ¶ U (effective Feb. 10, 1986) (may grieve failure to follow parole process).

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff concedes that he did not file any grievances in this case. It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶¶ G-3, T, V. The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at *1 (6th Cir. Aug.

3, 1998). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court may dismiss his action without prejudice.

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's Complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

### III.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that numerous parole decisions, as well as the process by which Plaintiff was interviewed, constitute a violation of his constitutional rights. To

sustain such a claim, Plaintiff must first establish that eligibility for parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Board of Pardons v. Allen*, 482 U.S. 369 (1987). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholz v. Inmates of the Nebr. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the Parole Board. *See Allen*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the Parole Board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991).

In numerous cases, this Court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the Parole Board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the Parole Board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, .234, .235. No statutory provision

requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(7).[2]

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for

---

[2] The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the Court. Release on parole has always been discretionary under Michigan law.

parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." As stated by the Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board.") Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the Board in assessing whether parole is appropriate. The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165. This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the Parole Board. In an unpublished decision, the Sixth Circuit has found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dahlman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest). Because Plaintiff has no liberty interest at stake, his due process claim must fail.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

 /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:        RICHARD ALAN ENSLEN
 April 18, 2005                UNITED STATES DISTRICT JUDGE